IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL R. CHUBB

      Plaintiff,

v.

SAM BROWNBACK et al.,

      Defendants.

Case No. 14-cv-03227-DDC-DJW

## MEMORANDUM AND ORDER

Plaintiff Michael Chubb brought this action against Governor Sam Brownback, Attorney General Derek Schmidt, and several other government officials from the Kansas Department of Aging and Disability Services, Larned State Hospital, and the Kansas Sexual Predator Treatment Program. His Complaint asserts that defendants, either individually or through a conspiracy, deprived plaintiff of various rights arising under the Constitution of the United States and federal statutes. Specifically, plaintiff asserts causes of action under 42 U.S.C. § 1983, 18 U.S.C. § 241, 42 U.S.C. § 1985, and 42 U.S.C. § 1986. He also claims a fraud, violating 18 U.S.C. § 1001, and that defendants discriminated against him, giving him a cause of action under 42 U.S.C. § 1981. Doc. 1. Finally, plaintiff asserts various state-law causes of action. All of plaintiff's causes of action arise from being denied access to his protected health information.

On September 23, 2015, Magistrate Judge Waxse recommended dismissal of plaintiff's discrimination, fraud, and § 241 claims for failure to state a claim. On September 27, 2016, this court ordered plaintiff to show cause why it should not adopt the Judge Waxse's recommendation and dismiss those claims. Doc. 39. Plaintiff has until October 18, 2016 to comply with that order.

1

Judge Waxse's September 2015 order also ordered service on just five of the defendants that plaintiff had named in his Complaint: Thomas Kinlen, Clifford Voelker, John Reid, Debra Colglazier, and Megan Brabb. Doc. 6. Service was returned as undeliverable for everyone but Ms. Colglazier and Mr. Kinlen. Dkt. Nos. 8–10. So, the only parties before the court today are defendants Debra Colglazier, Director of Clinical Management for Larned State Hospital, and Thomas Kinlen, the superintendent of Larned State Hospital, ("defendants").

This matter comes before the court on defendants' Motion to Dismiss plaintiff's § 1983, § 1985, § 1986 claims. Defendants also seek dismissal of plaintiff's state-law claims. Also before the court are defendants' Motion to Strike Plaintiff's Surreply (Doc. 35) and plaintiff's Motion for Leave to Amend Reply to Defendant's Motion to Dismiss (Doc. 36). After reviewing the parties' briefs, the court grants defendants' Motion to Strike Plaintiff's Surreply and plaintiff's Motion for Leave to Amend. It also grants, in part, defendants' Motion to Dismiss.

## Background

Because defendants bring their Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1)[1] and 12(b)(6), the facts alleged in plaintiff's Complaint control. *See S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014); *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).[2]

---

[1] Defendants do not label their Eleventh Amendment argument as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), but the court considers it on that basis. *See Jones v. Courtney*, 466 F. App'x 696, 699 (10th Cir. 2012) (explaining that sovereign immunity under the Eleventh Amendment bars federal jurisdiction); *accord Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 n.8 (1984).

[2] The parties refer to the *Martinez* report in their briefing, but the report is not included as part of the operative facts here. Because the *Martinez* report is not part of or referenced in the Complaint, the court cannot consider it without converting defendants' Motion to Dismiss into one seeking summary judgment. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (explaining that the court may not consider a *Martinez* report without converting a motion to dismiss to a summary judgment motion unless "the plaintiff challenges a prison's policies or established procedures and the *Martinez* report's description of the policies or procedures remains undisputed after plaintiff has an opportunity to respond." (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir.1991))). The court can decide defendants' Motion to Dismiss without referencing the *Martinez* report and so it declines to convert the motion into one for summary judgment.

Plaintiff is a civilly committed detainee of the Kansas Sexual Predator Treatment Program housed in Larned State Hospital.  Throughout his commitment, plaintiff has sought and gained access to his protected health information ("PHI") a number of times.  But, in January 2013, staff at Larned State Hospital began denying plaintiff's requests to access his PHI.

The Records Review Process

When a person committed at Larned State Hospital asks to review PHI, the requestor must fill out a form titled "Access to Records Request."  Doc. 1 at 7, ¶ 20.  Hospital staff then processes the request.  The hospital's treatment team is authorized to decide whether to grant an Access to Records Request and may deny a request for a number of reasons.  It is unclear, however, whether the treatment team is the only group authorized to make such a decision.  Once the final decision is made, staff reply to the request using another standard form, form CPR-350. In some situations, the requestor can appeal an adverse decision and does so by filing a "MS-231 'Access to Records Review' appeal form."  Doc. 1 at 8, ¶ 27.

First and Second PHI Requests

On January 8, 2013, plaintiff requested access to all of his PHI for the previous six months.  The hospital's treatment team denied his request.  Megan Brabb, then a records clerk at Larned State Hospital, informed plaintiff that he was denied access because the PHI he sought contained information that "ha[d] been compiled in reasonable anticipation of or for use in [a] civil, criminal, or administrative action."  Doc. 1 at 7, ¶ 20(a).  When plaintiff spoke with Ms. Brabb a few days later, she told him that he did not have the right to appeal this decision. Plaintiff then asked to speak with the treatment team to find out why he was denied access.  The treatment team responded:  "Request denied . . . Your lawyer can subpoena the records if needed."  *Id.* ¶ 21 (emphasis omitted).  Plaintiff did not ask his attorney to subpoena the records.

Instead of contacting his attorney, plaintiff filed a second Access to Records Request covering the same time period as his first request, but limiting his request to all PHI "not specifically compiled for use in [a]dministrative [a]ctions." *Id.* ¶ 22 (emphasis omitted).  His request was denied.  Again, the reason the team gave for denying the request was that the information sought had been "compiled in reasonable anticipation of or for use in [a] civil, criminal, or administrative action." *Id.* (emphasis omitted).

On February 22, 2013, five days before receiving word that his second request was denied, plaintiff sent a letter to defendant Debra Colglazier and Corrine Johnson, counsel for Kansas Department for Aging and Disability Services.  In his letter, plaintiff asserted his belief that the reason for denying his first request was fraudulent and that he was considering taking legal action if he wasn't given access to his PHI.

Finally, on March 6, 2013, hospital staff granted plaintiff's access to the PHI he had requested back in early January 2013.

Third PHI Request

On April 22, 2013, plaintiff filed a third Access to Records Request.  His request was denied for the same reason as the first two.  But this time, Clifford Voelker, Administrative Program Director for the Sexual Predator Treatment Program at Larned State Hospital, sent plaintiff a MS-231 appeal form, giving plaintiff the opportunity to appeal the decision.  Plaintiff chose not to file the appeal form because "the denial was not subject to review or appeal." Doc. 1 at 8, ¶ 27.  Instead of appealing, plaintiff sent Mr. Voelker a letter threatening legal action.

On September 16, 2013, plaintiff made good on that threat and filed an action to compel access to his PHI in the Sedgwick County, Kansas District Court.[3]  On December 20, 2013, the

---

[3] The court takes judicial notice of plaintiff's related state-court legal proceedings.  *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004) (permitting judicial notice of facts on motions to dismiss);

Kansas state court granted plaintiff's motion, ordering that,

> [b]y agreement of the parties . . . the Attorney General shall provide [Mr. Chubb's] counsel with all of Mr. Chubb's relevant treatment and medical records and reports and [Mr. Chubb's] counsel will see that appropriate copies are made and provided to Mr. Chubb, and thereby obviating the need for additional private review of the documents by Mr. Chubb at Larned State Hospital.

Order at 2, *In re Chubb*, No. 08-PR-645 (Sedgwick Cty. Dist. Court Dec. 20, 2013).  According to plaintiff's Complaint, he has never received or seen the requested records.  Doc. 1 at 9, ¶¶ 29–31.

Fourth PHI Request

On July 7, 2014, plaintiff filed a fourth Access to Records Request.  A month later, plaintiff sent a copy of the December 2013 order to Heidi Cooper, a member of the hospital's Clinical Information Management team, along with a letter requesting access to his records and PHI.  He never received a reply from Ms. Cooper.  But, on September 5, 2014, plaintiff spoke with a hospital staff member who informed him that Ms. Cooper would not allow him to review his records until an attorney for the hospital gave her permission to do so.

As of December 11, 2014—the date when plaintiff filed his Complaint—hospital staff had not contacted plaintiff about reviewing the PHI requested in his fourth Access to Records Request.

## **Analysis**

The court addresses all three pending motions below.  When doing so, the court is mindful that plaintiff brings this lawsuit pro se, and so the court construes his filings liberally and holds them to a less stringent standard than those drafted by lawyers.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the court does not assume the role of plaintiff's

---

*St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (finding judicial notice of records of other courts appropriate if the proceedings are related).

advocate.  *Id.*  Nor does plaintiff's pro se status excuse him from complying with the court's rules, or facing the consequences of noncompliance with them.  *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

**I.      Defendant's Motion to Strike Plaintiff's Surreply**

Plaintiff filed a surreply to defendants' Motion to Dismiss on March 31, 2016.  Doc. 34. Defendants ask the court to strike plaintiff's surreply because he filed it without leave.

District of Kansas Rule 7.1 allows parties to file a motion, response, and reply, but makes no mention of a surreply.  Typically, surreplies are not allowed.  *Jones v. BNSF Ry. Co.*, No. 14-2616-JAR-KGG, 2016 WL 3671233, at *1 (D. Kan. July 11, 2016).  In rare cases, though, the court may permit a party to file a surreply, "but not without leave of court."  *Taylor v. Sebelius*, 350 F. Supp. 2d 888, 900 (D. Kan. 2004) (citing *Humphries v. Williams Nat. Gas Co.*, No. 96-4196-SAC, 1998 WL 982903, at *1 (D. Kan. Sept. 23, 1998)).  Here, plaintiff did not seek leave and he has offered no excuse or justification for filing his surreply without leave.  The court thus grants defendants' Motion to Strike Plaintiff's Surreply and will disregard plaintiff's surreply when considering defendants' Motion to Dismiss.

**II.     Plaintiff's Motion to Amend Reply**

Plaintiff also filed a motion entitled "Motion to Amend Reply to Defendants' Motion to Dismiss" on March 21, 2016.  Doc. 36.  The court construes this motion as a motion to amend plaintiff's response to defendants' Motion to Dismiss.  When faced with similar motions in the past, our court has considered the motion "essentially a request to file out of time, which requires a showing of excusable neglect" under Rule 6(b)(1)(B).  *Coleman v. Blue Cross Blue Shield of Kan.*, 487 F. Supp. 2d 1225, 1234 (D. Kan. 2007), *aff'd*, 287 F. App'x 631 (10th Cir. 2008).

Consistent with this practice, the court construes plaintiff's motion as a motion to file out of time, and considers whether he has shown the request excusable neglect.

The concept of excusable neglect encompasses more than just circumstances outside a party's control. *Coleman*, 487 F. Supp. 2d at 1234. It permits the court, when appropriate, "to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond [a] party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 386 (1993). "[I]gnorance of the rules, or mistakes construing the rules," however, "usually do not constitute 'excusable' neglect." *Id.* at 392. Factors to consider when determining whether neglect is excusable include:

> (1) the danger of prejudice; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reasons for the delay which includes whether it was within the reasonable control of the party seeking to show excusable neglect; and (4) whether that party acted in good faith.

*Coleman*, 487 F. Supp. 2d at 1234–35 (citing *Pioneer*, 507 U.S. at 395). Though these factors guide the court's inquiry, the excusable-neglect determination, ultimately, is an equitable decision that's committed to the court's discretion. *Pioneer*, 507 U.S. at 395; *see also Bishop v. Corsentino*, 371 F.3d 1203, 1206 (10th Cir. 2004) (reviewing excusable-neglect decision under abuse of discretion standard).

The court is persuaded that plaintiff filed his motion in good faith and that granting it will not prejudice defendants or negatively affect these proceedings. Plaintiff filed his motion a little over two months after the response deadline had passed. *See* Fed. R. Civ. P. 6 (explaining how to calculate time to file); D. Kan. R. 6.1(d)(1) (setting deadline for response to dispositive motions at 21 days). Though this delay may seem long, it is not so long that it prejudices defendants. The court thus exercises its discretion and grants plaintiff's Motion to Amend. In this circumstance, the court typically would grant defendants the opportunity to file a response to

plaintiff's amended response. *Coleman*, 487 F. Supp. 2d at 1235. But that is not necessary here. Defendants already have responded to the substantive arguments advanced in plaintiff's amended response, Doc. 38 at 3–4, and the court considers their response in its ruling below. In sum, granting plaintiff's motion will not deprive defendants of a fair chance to respond to the arguments against them and granting plaintiff's Motion to Amend will not prejudice defendants or cause any delay in these proceedings.

### III.    Defendants' Motion to Dismiss

Defendants contend that Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) require dismissal of plaintiff's claims. Defendants invoke Rule 12(b)(1) because, they contend, the court lacks subject matter jurisdiction to hear plaintiff's claims against them in their official capacities ("official-capacity claims"). Defendants invoke Rule 12(b)(6), asserting that the Complaint fails to state a claim against them in their individual capacities ("individual-capacity claims"). Finally, defendants assert that the court should decline to exercise supplemental jurisdiction over plaintiff's claims that rely on state law. The court considers each of defendants' arguments below.

### A.    Subject Matter Jurisdiction:  Official Capacity and State Law Claims

#### *1.    Rule 12(b)(1) Motion to Dismiss Standard*

The court must dismiss any case that it lacks subject matter jurisdiction to hear. Fed. R. Civ. P. 12(h)(3). The court must do so because "[a] court lacking jurisdiction cannot render judgment." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citing *Bradbury v. Dennis*, 310 F.2d 73, 74 (10th Cir. 1962)). The party who invokes the court's jurisdiction bears the burden to establish that jurisdiction in fact exists. *Id.* Here, that party is plaintiff.

Because defendants attack the Complaint's allegations of subject matter jurisdiction, the court "must accept the allegations in the complaint as true." *Holt*, 46 F.3d at 1002 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

### 2.      Eleventh Amendment Immunity

Defendants assert that the Eleventh Amendment bars plaintiff's official-capacity claims against them because, as employees of the State of Kansas, they are immune from suit in federal court.

The Eleventh Amendment grants immunity that "accord[s] states the respect owed them as joint sovereigns," and "applies to any action brought against a state in federal court, including suits initiated by a state's own citizens." *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007); *see also Patillo v. Larned State Hosp.*, 462 F. App'x 780, 783 (10th Cir. 2012) (stating that Eleventh Amendment immunity applies to 42 U.S.C. §§ 1983, 1985, and 1986 actions). Eleventh Amendment immunity protects states and state-government officials sued in "[their] official character." *Governor of Ga. v. Madrazo*, 26 U.S. 110, 123–24 (1828). But, federal suits against state-government officials can proceed when the plaintiff only seeks prospective relief for an ongoing violation of rights, *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002), and the relief sought is not premised on state law, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Often, the prospective relief envisioned by this exception is an injunction or a declaratory judgment. *Alden v. Maine*, 527 U.S. 706, 747 (1999). And indeed, the Complaint here seeks both forms of prospective relief.[4]

---

[4] Plaintiff asks the court to take judicial notice "that neither absolute nor qualified immunities extend to suits for injunctive or declaratory relief under" § 1983. Doc. 37 at 1. As defendants point out, however, taking judicial notice of a legal principle—as plaintiff asks the court to do—is not appropriate. Courts may judicially notice adjudicative facts, not legal principles. *See United States v. Wolny*, 133 F.3d 758, 764 (10th Cir. 1998) (discussing adjudicative facts). The court thus denies plaintiff's request for judicial notice.

a.    Injunction

"Under *Ex parte Young*, a plaintiff may avoid the Eleventh Amendment's prohibition on suits against states in federal court by seeking to enjoin a state official from enforcing an unconstitutional statute." *Cressman v. Thompson*, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013) (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)).  This is so because "certain suits for . . . injunctive relief against state officers must . . . be permitted if the Constitution is to remain the supreme law of the land." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007) (quoting *Alden*, 527 U.S. at 747).

The injunction plaintiff seeks here does not qualify for this exception.  Plaintiff seeks an injunction enjoining defendants "from taking retaliatory action against [him] for bringing and proceeding with this lawsuit."  Doc. 1 at 14, ¶ 47(b).  An injunction of this character does not ask to restrain defendants from enforcing an unconstitutional statute or policy.  Therefore, plaintiff's request for an injunction does not abrogate defendants' Eleventh Amendment immunity from plaintiff's claims against them in their official capacities.

b.    Declaratory Judgment

Under the second exception to Eleventh Amendment immunity, a plaintiff may seek a declaratory judgment against a state official in her official capacity so long as the putative declaration does not implicate past liability of that official or the state.  *See Verizon*, 535 U.S. at 646 (allowing declaratory judgment action based on an official's past conduct to proceed in federal court only because the declaration did not affect "past liability of the State, or any of its [officials]").  To issue a judgment declaring that a state official is liable for past conduct would "impose *upon the State* 'a monetary loss resulting from a past breach of a legal duty on the part

of the defendant state officials.'" *Id.* (quoting *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)). This is precisely what the Eleventh Amendment prohibits.

The declaratory judgment sought here does not fit this declaratory-judgment exception. Plaintiff seeks a "declaration that [d]efendants have violated [his] constitutional right of due process." Doc. 1 at 14, ¶ 47(a). Issuing such a declaration necessarily would find state officials—defendants—liable for their past conduct in their official capacities. Therefore, plaintiff's request for a declaratory judgment does not abrogate defendants' Eleventh Amendment immunity from plaintiff's claims against them in their official capacities.

Because plaintiff does not seek prospective relief capable of supporting an exception to defendants' Eleventh Amendment immunity, the court grants defendants' motion to dismiss plaintiff's official-capacity claims.

### 3.    *Supplemental Jurisdiction*

Defendants next urge the court not to exercise supplemental jurisdiction over plaintiff's state-law claims. It is a well-established principle of federal jurisdiction that when a court dismisses all federal claims before trial, it should dismiss all state claims as well. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). But here, the court's show-cause order is still pending, so plaintiff's equal protection claims, 42 U.S.C. § 1981, 18 U.S.C. § 1001, and 18 U.S.C. § 242 claims remain pending as well as his state-law claims. Those pending federal claims make it inappropriate to decline supplemental jurisdiction until the issues raised by the show-cause order are finally decided. If plaintiff fails to show cause, defendants may renew their supplemental jurisdiction arguments.

### B.    Failure to State a Claim:  Individual-Capacity Claims

#### 1.    *Rule 12(b)(6) Motion to Dismiss Standard*

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'"  *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

On a motion to dismiss like the one presented here, the court assumes that the Complaint's factual allegations are true.  *Id.* at 1263.  But it need not accept pure legal conclusions as true.  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to state a claim for relief.  *Iqbal*, 556 U.S. at 678.

#### 2.    *42 U.S.C. § 1985 and 42 U.S.C. § 1986 Claims*

Defendants next contend that plaintiff fails to state a claim for relief under § 1985(3) and § 1986.  The court agrees.

To assert a plausible claim under § 1985(3), plaintiff must allege a conspiracy based on racial animus. *See Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015). He does not. The Complaint never mentions plaintiff's race, nor does it make any allegations that one could construe to allege that defendants were motivated by racial animus. The absence of such allegations means that plaintiff fails to allege a plausible claim for relief under § 1985(3). Because of this, his claims under § 1986 also fail. *Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir. 1997); *Shifrin v. Colorado*, No. 09-cv-03040-REB-MEH, 2010 WL 3843083, at *12 (D. Colo. Aug. 11, 2010). The court thus dismisses plaintiff's claims under 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986.

### 3.   *Qualified Immunity*

Next, defendants contend that even if plaintiff could state a § 1983 claim against them in their individual capacities qualified immunity protects them from any potential liability and so, plaintiff has failed to state a claim on which he could recover.[5]

Public officials are entitled to qualified immunity from damages liability when performing discretionary functions. *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). This means a public official is entitled to qualified immunity if sued for actions she took while functioning as an administrator. *See id.* at 275–76 (noting that a prosecutor is only entitled to qualified immunity when acting as an administrator). Qualified immunity is the norm for state officials, and it "serves to insulate from suit 'all but the plainly incompetent or those who knowingly violate the law.'" *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Here, plaintiff has sued defendants in their individual

---

[5] Although defendants typically present a qualified immunity defense in a motion for summary judgment, the Tenth Circuit has recognized that "qualified immunity is a question of law to be resolved at the earliest possible stage of litigation" when, as here, there is no relevant factual dispute. *Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007) (quoting *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001)); *see also Henderson v. Simms*, 54 F. Supp. 2d 499, 501, 503 (D. Md. 1999) (granting motion to dismiss based on qualified immunity).

capacities for actions they took while serving as administrators of Larned State Hospital. *See* Doc. 1 at 4, ¶ 12 (allegations about defendant Kinlen); *id.* at 5, ¶ 15 (allegations about defendant Colglazier). Thus, they are entitled to qualified immunity.

Plaintiff could nullify defendants' qualified immunity by alleging facts that, if proven true, would show that (1) defendants violated his constitutional or federal statutory rights; and by showing that (2) "the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that a reasonable [official] would have known that his or her challenged conduct was illegal." *Martinez v. Carr*, 479 F.3d 1292, 1294–95 (10th Cir. 2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *abrogated by Pearson v. Callahan*, 555 U.S. 223 (2009)). The court may consider either part of this two-prong test first. *Pearson*, 555 U.S. at 236. Regardless of which prong the court considers, however, a complaint must "make clear exactly who is alleged to have done what to whom" to state a claim sufficient to nullify a defendant's qualified immunity. *Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Lumping one defendant in with a group is not sufficient—the complaint must "isolate the allegedly unconstitutional acts" of each defendant. *Id.* (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)).

Here, the Complaint never mentions any action taken by defendant Thomas Kinlen— unconstitutional or otherwise. Plaintiff alleges Mr. Kinlen's job title and duties, but nothing more. At best, his Complaint lumps Mr. Kinlen in with seven other named defendants and an unspecified number of "Unknown Persons." Doc. 1 at 11, ¶ 39. Because the Complaint does not allege—specifically—that Mr. Kinlen took any action at all, plaintiff has failed to allege facts that, if true, would state an individual-capacity claim against Mr. Kinlen for either personal

14

liability or supervisory liability.  Plaintiff thus has failed to nullify Mr. Kinlen's qualified immunity.

Plaintiff also fails to state a claim against defendant Debra Colglazier.  The Complaint's only references to Ms. Colglazier assert:  (1) that plaintiff sent her a letter informing her that he believed the reason given for denying his first and second access requests was fraudulent; (2) her job duties and title; and (3) a broad allegation that she and seven other named defendants and an unspecified number of "Unknown Persons" violated plaintiff's rights.  *See* Doc. 1 at 5, ¶ 15; *id.* at 8, ¶ 24; *id.* at 11, ¶ 39.  Plaintiff's letter to Ms. Colglazier is the functional equivalent of filing a grievance.  "[D]enial of a grievance, by itself without any connection to the violation of constitutional rights alleged by [a] plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).  And without alleging personal participation, a § 1983 action for personal or supervisory liability cannot stand.  *Id.* Plaintiff's only specific allegation about Ms. Colglazier is that she did not act on his grievance, and so, in effect, denied his grievance.  This is inadequate to state a claim.  Whether his Complaint intends to allege personal or supervisory liability, plaintiff has failed to allege facts that, if true, state an individual-capacity claim against Ms. Colglazier.  Plaintiff thus has failed to nullify Ms. Colglazier's qualified immunity.

Because plaintiff has not alleged facts sufficient to nullify defendants' qualified immunity, the court dismisses his claims under 42 U.S.C. § 1983.

## IV.    Conclusion

For the reasons explained above, the court grants defendants' Motion to Strike, plaintiff's Motion for Leave to Amend, and defendants' Motion to Dismiss in part.  The court grants defendants' motion to dismiss plaintiff's official-capacity and individual-capacity claims under

42 U.S.C. § 1983, § 1985(3), and § 1986, but the court denies defendants' motion to dismiss plaintiff's pendent state-law claims at this time.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Strike Plaintiff's Surreply (Doc. 35) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff's Motion for Leave to Amend Reply (Doc. 36) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant's Motion to Dismiss (Doc. 26) is granted in part.  The court grants defendants' motion to dismiss plaintiff's official-capacity and individual-capacity claims under 42 U.S.C. § 1983, § 1985(3), and § 1986, but the court denies defendants' motion to dismiss plaintiff's pendent state-law claims at this time.  Should plaintiff fail to show cause why the court should not dismiss his remaining federal claims, defendants' may renew their motion to dismiss plaintiff's state-law claims.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff's Request for Judicial Notice (Doc. 37) is denied.

**IT IS SO ORDERED.**

**Dated this 28th day of September, 2016, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**